**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | ) ) ) | CASE NO. 1:12-cv-01430 |
| Plaintiff, | ) ) | MAGISTRATE JUDGE NANCY A. VECCHIARELLI |
| v. | ) ) | |
| CNH AMERICA LLC, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | **(Doc. No. 41)** |

This case is before the undersigned United States Magistrate Judge upon the

consent of the parties.  (Doc. No. 24.)  Before the Court is Defendants CNH Industrial

America LLC ("CNH") and Cummins, Inc.'s ("Cummins") Motion for Summary

Judgment.  (Doc. No. 41.)  This is a case wherein Plaintiff Nationwide Agribusiness

Insurance Company ("Nationwide" or "Plaintiff") seeks to recover the amount it paid to

its insured after a fire destroyed the insured's 2010 Case IH STX485 tractor (the

"Tractor").  Plaintiff alleges that CNH defectively designed and manufactured the

Tractor and Cummins defectively manufactured, designed, and distributed the Tractor's

turbocharger.  (First Amended Complaint ("Amend. Compl."), Doc. No. 5-1 at ¶ 6.)

Plaintiff asserts common law claims against Defendants for negligence, strict liability,

and breach of express and implied warranties.  (*Id.* at ¶¶ 9-22.)  Defendants seek

summary dismissal of all of Plaintiff's claims as a matter of law.  For the reasons set

forth below, Defendants' motion for summary judgment is GRANTED as detailed

herein.

## I.    BACKGROUND

### A.    The Tractor Purchase

In October 2009, Burkhart Farm Center, Inc. ("BFC"), a family-owned Ohio corporation which sells and services farm equipment, purchased a 2010 Case IH STX485 tractor from CNH.  (*See* CNH Invoice, Doc. No. 41-3.)  The Tractor utilized a turbocharger manufactured by Cummins.  (Amend. Compl., Doc. No. 5-1 at ¶ 6; Defendant CNH America LLC's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint ("CNH Answer"), Doc. No. 27 at ¶ 6.)  In December 2009, BFC sold the Tractor to Burkhart Farms, an Ohio partnership that operates a 5,000-acre "feed, chemical, [and] fertilizer supply farm" for BFC.  (Deposition of Ronald W. Burkhart, ("Burkhart Dep.") at 12:20-21, Doc. No. 41-4.)  Floyd Burkhart and his two sons, Ron and Chuck Burkhart, are the partners in Burkhart Farms.  (*Id.* at 13:1-16.)

### B.    The Fire

Burkhart Farms did not use the Tractor in its fields until April 5, 2010. (Deposition of James E. Sulser ("Sulser Dep.") at 17:11-17, Doc. No. 41-5.)  On that date, Jim Sulser ("Sulser"), a Burkhart Farms employee, used the Tractor to apply anhydrous ammonia to a 1,900-acre field in preparation for planting corn seed.  (*Id.* at 39:18, 41:1-10.)  Sulser applied ammonia to about 100 acres of the field on April 5, 2010, before noticing steam and water coming from the engine caused by what Sulser believed to be a break in the Tractor's radiator hose.  (*Id.* at 20:15-17, 27:10, 41:6-7.)  To remedy the break in the radiator hose, Sulser cut off a ten-foot section of the hose, re-routed the shortened length through the engine compartment, and "plugged it back

2

in." (*Id.* at 20:15-23, 33:23-25, 71:13.)  Sulser testified that he did not consult the

Tractor's instruction manual for instructions on how to repair the hose.  (*Id.* at 29:19-

22.)  After the repair, Susler continued to operate the Tractor for a couple hours that

evening without incident.  (*Id.* at 39:1-5.)

Sulser resumed using the Tractor the following day, April 6, 2010, starting at

around seven o'clock in the morning.  (*Id.* at 44:17-20.)  After about three hours, the

Tractor's engine stopped, and Sulser heard a popping sound.  (*Id.* at 54:19-21, 62:6-

24.)  Sulser turned off the fertilizer applicator and exited the cab to locate the problem.

(*Id.* at 54:16-25.)  He saw a small fire beneath the hood of the Tractor and called for

help.  (*Id.* at 55:1-7.)  Sulser testified that the small fire grew larger when an oil hose

came loose from the engine block and began spraying oil, igniting three to four foot

flames.  (*Id.* at 55:8-13, 66:4-8.)  Members of the fire department arrived and eventually

extinguished the fire, but not before the Tractor was destroyed.  (*Id.* at 68:11-10;

Amend. Compl., Doc. No. 5-1 at ¶ 10.)  In addition to the Tractor, the fire destroyed an

in-cab GPS guidance system and an in-cab applicator system, which were installed by

the owner after purchasing the Tractor.  (Affidavit of R. Scott Whittington ("Whittington

Aff."), Doc. No. 44-2 at ¶ 5.)  The fire also damaged a fertilizer applicator attached to

the Tractor, but it was repairable.  (*Id.*)

Nationwide paid $252,075.56 to Floyd Burkhart pursuant to a casualty/property

insurance policy.  (*Id.* at ¶ 6.)  The amount consisted of $236,879.39 for the Tractor and

$15,696.17 for damage caused to the after-market equipment and for other expenses

incurred by Burkhart Farms as a result of the fire.  (*Id.*)

3

### C.  Expert Opinions on Cause of the Fire

Plaintiff disclosed John W. Gray ("Gray") and Scott M. Howell ("Howell") from Rimkus Consulting Group, Inc. ("Rimkus"), as its experts, and both experts provided a single report containing their joint opinion as to the cause and origin of the fire that destroyed the Tractor.  (*See* Rimkus Consulting Group, Inc., Report of Findings dated December 16, 2013 ("Rimkus Report"), Doc. No. 41-6.)  The experts concluded that: (1) The fire originated in the rear portion of the engine compartment; (2) the repaired hose was not a factor in the initiation of the fire; and (3) the exact cause of the fire has not been determined.  (*Id.* at 2.)  The experts further speculated that "[t]he potential of ordinary combustibles in the engine compartment becoming dislodged and coming into contact with the hot surface of the turbocharger could not be eliminated."  (*Id.* at 4-5.)

Defendants presented the affidavit of Robert Hawken ("Hawken"), a Product Safety Specialist for CNH and certified fire and explosion investigator who investigates and analyzes the cause and origin of equipment fires involving CNH agricultural equipment.  (Affidavit of Robert Hawken ("Hawken Aff."), Doc. No. 41-7 at ¶ 1.)  On February 12, 2014, Hawken concluded:

> In my expert opinion, I believe to a reasonable degree of certainty that the fire was caused by the modification of the heater hose by the Tractor operator the day before the fire occurred.  The hose ruptured and released a spray of hot engine coolant/antifreeze directly onto the heated surfaces of the engine's hot exhaust components.  It is my further opinion to a reasonable degree of certainty that this fire was not caused by any defects in design or manufacture of the Tractor or turbocharger.

(*Id.* at ¶¶ 7-8.)

4

Defendants also presented the expert opinion of Suzanne Smyth, Ph.D. ("Smyth"), of Exponent Failure Analysis Associates ("Exponent"), who conducted an investigation of the fire and issued a report on her findings.  (Report of Suzanne Smyth, Ph.D., dated February 14, 2014 ("Smyth Report"), Doc. No. 46-3.)  Smyth rendered the following conclusions regarding the origin and cause of the fire:

1. Based on the damage to the tractor and the reported witness observations, the origin of the fire is in the rear left area of the engine compartment.
2. The modification of the heater hose by Mr. Sulser altered the cooling system.
3. The bend radius of the modified heater hose was significantly smaller than the minimum bend radius specified by the heater hose manufacturer.
4. The modification of the heater hose resulted in a release of coolant.
5. The ignition of a spray of coolant on the hot surfaces of the exhaust system could not be refuted as a cause of the fire.

(*Id.* at 12.)

On March 24, 2014, Rimkus provided a second report rebutting Hawken's opinion. In the report, Howell concluded that the repair and re-routing of the Tractor heater hose by Sulser one day before the fire did not cause or contribute to the fire.  (Scott M. Howell Rebuttal Report dated March 24, 2014 ("Rimkus Rebuttal"), Doc. No. 45-1 at 1-3.)

### D.   Procedural Background

On October 5, 2011, Nationwide filed a products liability lawsuit in the Common Pleas Court of Crawford County, Ohio, against CNH.  On April 6, 2012, Nationwide filed a First Amended Complaint with the state court adding as defendants Cummins, Fiat Powertrain Technologies of North America, Inc. ("Fiat Powertrain"), and Fiat Industrial, S.p.a. ("Fiat Industrial"), and on June 7, 2012, the case was removed to this Court.

(*See* Doc. No. 5.)  On August 1, 2010, by stipulation between Nationwide and the aforementioned defendants, Nationwide voluntarily dismissed Fiat Powertrain (without prejudice) and Fiat Industrial (without prejudice).  (*See* Doc. No. 16.)

Plaintiff asserts the following allegations against CNH and Cummins: (1) Defendants negligently designed, manufactured, and supplied the Tractor and its components such that they deviated in a material way from Defendants' design specification, formula, or performance standards or from otherwise identical units manufactured to the same design specifications, formula, or performance standards (Amend. Compl., Doc. No. 5-1 at ¶¶ 9-15); (2) in designing, manufacturing, supplying, and selling the Tractor and its components to the insured, Defendants expressly and impliedly warranted the insured that the Tractor and its components were good and of merchantable quality and fit for the purposes for which each was ordinarily and foreseeably intended and/or used; and Defendants breached those warranties (*Id.* at ¶¶ 15-18); and (3) Defendants are strictly liable to Nationwide for: designing, manufacturing, and supplying defective products that they knew or should have known subjected Burkhart to an unreasonable risk of harm; manufacturing products in a defective condition and unreasonably dangerous to Burkhart; and failing to warn Burkhart of the aforesaid dangerous conditions (*Id.* at ¶¶ 19-22).

On February 18, 2014, Defendants filed a motion for summary judgment on all of Plaintiff's claims.  (Motion for Summary Judgment ("MSJ"), Doc. No. 41.)  On March 27, 2014, Plaintiff filed a response to Defendants' motion.  (Opposition to Motion for Summary Judgment ("Plaintiff's Opposition"), Doc. No. 44.)  On April 15, 2014, Defendants filed a reply to Plaintiff's response.  (Reply to Response to Motion for

6

Summary Judgment ("Defendants' Reply"), Doc. No. 53.)

## II.    LAW & ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury.  See Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995).  The court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact.  Al-Qudhai'een v. Am. W. Airlines, Inc., 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989)).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  Id. (citing In re Morris, 260 F.3d 654, 665 (6th Cir. 2001)).

In reviewing summary judgment motions, a court must view the evidence in a

7

light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  In addition, the court does not weigh the evidence or make credibility determinations.  *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Id.* Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 251-52.

## B.  Application of Standard

Here, Defendants argue that they are entitled to summary judgment on Plaintiff's claims for negligence, strict liability, and breach of express and implied warranties.  In seeking dismissal of all of Plaintiff's claims as a matter of law, Defendants assert the following:

1.  Plaintiff has failed to produce any expert opinion supporting a finding that the Tractor, or any component part, was defective, and has failed to provide expert proof of a causal connection between any alleged defect in the Tractor or its components and the fire.

2.  Plaintiff is barred from recovery on all claims because Plaintiff's insured substantially modified the Tractor, severing the manufacturer's liability.

8

3.  Plaintiff is barred from recovery on a tort theory by Ohio's economic loss rule.

4.  Plaintiff is barred from recovery under a negligence theory due to the comparative negligence of its insured.

5.  Plaintiff's asserted common law causes of action for breach of negligence, breach of warranty, and strict liability are abrogated by the Ohio Product Liability Act.

6.  Plaintiff's breach of warranty claims are barred by the terms of the express warranty that accompanied the Tractor.

(MSJ, Doc. No. 41 at 2.)  The Court will address each of Defendants' arguments in due course.

### 1.  Whether Plaintiff has Produced Sufficient Evidence Showing that the Tractor was Defective and was a Proximate Cause of the Fire

Defendants argue that they are entitled to summary judgment due to Nationwide's failure to offer any expert testimony establishing the existence of a defect in the Tractor or how that defect proximately caused the damages described in Plaintiff's Complaint. According to Defendants, because proof of what caused the Tractor fire involves complex, technical matters beyond the knowledge of the average fact finder, Plaintiff was required to provide expert testimony demonstrating how the Tractor was defectively designed or manufactured.  Plaintiff maintains that a product defect claim may be proved by circumstantial evidence without direct evidence of a particular defect where the failure occurs under circumstances that are indicative of a product defect, and where other possible causes are eliminated.

Ohio product liability law is consolidated under the Ohio Product Liability Act (the

9

"OPLA" or the "Act"), Ohio Revised Code section 2307.71 through section 2307.80.[1]  To

sustain a products liability claim under the Act, a plaintiff must prove by a preponderance

of the evidence that: (1) there was a defect in the product; (2) the defect was a proximate

cause of the harm for which the plaintiff seeks to recover compensatory damages; and (3)

the manufacturer designed, formulated, produced, constructed, created, assembled, or

rebuilt the actual product that was the cause of the harm of which the plaintiff complains

Ohio Rev. Code. Ann. § 2307.73(A).  Under Ohio law, a product defect may be proved by

direct or circumstantial evidence, or both.  *Colbach v. Uniroyal Tire Co., Inc.,* 108 Ohio

App. 3d 448, 458, 670 N.E.2d 1366, 1372 (8th Dist. 1996).  The OPLA specifically

provides that if a claimant is unable to establish by direct evidence that the manufacturer's

product in question was defective because the product was destroyed, then "consistent

with the Rules of Evidence, it shall be sufficient for the claimant to present circumstantial

or other competent evidence that establishes, by a preponderance of the evidence, that

the manufacturer's product in question was defective. . . ."  Ohio Rev. Code. Ann. §

2307.73(B).

        Here, Nationwide has not provided direct evidence of a defect in the Tractor

that caused the fire at issue.  Nationwide's experts–Gray and Howell of

Rimkus–concluded in their initial report that while Sulser's modification of the hose was

not a factor in the initiation of the fire, the precise cause of the fire could not be

---

[1]        Plaintiff did not reference the OPLA in its Amended Complaint, but rather
        plead strict liability under the common law.  As discussed in more detail in
        section five below, the OPLA abrogates Plaintiff's common law strict
        liability claim.  As a result, the Court will treat the claim as a claim for
        statutory product liability under the Act and analyze it as such.

determined.  (Rimkus Report, Doc. No. 41-6 at 5.)  Gray and Howell could only speculate as to what caused the fire, and noted that "[t]he potential of ordinary combustibles in the engine compartment becoming dislodged and coming into contact with the hot surface of the turbocharger could not be eliminated." (*Id.* at 7-8.) Furthermore, the experts did not identify any alleged defect in the Tractor.  Thus, to support its claim that there was a defect in the Tractor that was the proximate cause of the fire, Nationwide has relied on circumstantial evidence alone.  To prove by a preponderance of the evidence that a defect in the Tractor proximately caused the damages described in its Complaint, Nationwide focuses solely on the fact that the Tractor was nearly brand new when it caught fire and burned, and argues that defect-free products do not ordinarily catch fire.  (*See* Plaintiff's Opposition, Doc. No. 44 at 10-11.)

While it is well settled that the existence of a manufacturing defect may be established by circumstantial evidence alone, Nationwide has failed to provide sufficient circumstantial evidence to demonstrate that the fire that destroyed the Tractor "was caused by a defect and not other possibilities." *State Auto Mut. Ins. Co. v. Chrysler Corp.,* 36 Ohio St.2d 151, 156, 304 N.E.2d 891, 895 (1973).  Nationwide's reliance on Ohio case law to argue that the Tractor was defective because it caught fire after minimal use is unpersuasive, because in each of the cases Nationwide cites, the plaintiff was able to offer circumstantial evidence of a specific defect in the product at issue.  For example, in *Cincinnati Ins. Co. v. Volkswagen of America, Inc.*, 29 Ohio App.3d 58, 502 N.E.2d 651 (10th Dist. 1985), a product liability suit arising from a fire that started in the vehicle of the plaintiff's insured, the court found circumstantial

11

evidence presented by the plaintiff sufficient to prove the existence of a product defect. There, the plaintiff offered the opinion of an expert who testified that the proximate cause of the fire was the shortening and arcing of a wire in the main electrical cable harness that was part of the vehicle when it left the defendant's control. *Id.* at 60. The court explained:

> [R]easonable jurors could find that a defect-free main electrical cable harness of a motor vehicle does not ordinarily start fires; that the reasonable expectations of a buyer of a motor vehicle is that the main electrical cable harness of such vehicle will not start a fire; and that an inference of a defect can be made from the fact that a fire originated in a main electrical cable harness without any known contributing causes by users of such motor vehicles.

*Id.* at 62. Nationwide misconstrues the holding of *Cincinnati* to mean that a product defect may be inferred solely from the fact that a fire originated in the product, as defect-free products do not start fires. Unlike the circumstances in *Cincinnati*, where the Plaintiff offered evidence of a specific defect in a wiring harness within the vehicle, here, Plaintiff has offered no evidence of a defect in the Tractor that could have caused it to catch fire.

Similarly, in *State Auto Mut. Ins. Co. v. Chrysler Corp.,* 36 Ohio St.2d 151, 156, 304 N.E.2d 891, 895 (1973), the court held that the plaintiff introduced sufficient circumstantial evidence to avoid a directed verdict on the issue of the existence of a defect in the right-front brake hose of a truck that was a damaged in a collision caused by an alleged brake failure. Unlike Nationwide, the plaintiff in *State Auto* introduced circumstantial evidence as to a specific defect in the right-front brake hose that existed at the time it left the defendants' control. *Id.* at 893. The court concluded that "[t]he evidence admitted at trial establishes that the brake failure was caused by a leakage of brake fluid

from a hole in the right-front brake line, which was original equipment on the vehicle and had not been tampered with." *Id.* at 895.  Likewise, in *Colboch v. Uniroyal Tire Co., Inc.,* 108 Ohio App.3d 448, 458, 670 N.E.2d 1366, 1371-72 (8th Dist. 1996), where the court found that the plaintiff produced sufficient evidence to overcome the defendant tire manufacturer's motion for directed verdict, the plaintiff had identified a specific defect in the tire that "deviated from the performance standards of the manufacturer."  Here, Nationwide has come forth with no such evidence.

Absent expert testimony or other evidence demonstrating how the Tractor was defective, Plaintiff cannot establish that Defendants' conduct proximately caused the losses associated with the fire, and Plaintiff's product liability claim must be dismissed. *See Botnick v. Zimmer, Inc.,* 484 F.Supp.2d 715, 723-24 (N.D. Ohio 2007) (citing *McGrath v. Gen. Motors Corp.*, 26 Fed. App'x. 506, 511 (6th Cir. 2002).   While Plaintiff's experts opined that the repaired hose was not a factor in the initiation of the fire, the experts did not identify any alleged defect in the Tractor.  Moreover, the experts specifically noted that they could not eliminate as a potential cause of the fire "ordinary combustibles in the engine compartment becoming dislodged and coming into contact with the hot surface of the turbocharger."  (Rimkus Report, Doc. No. 41-6 at 8.) Thus, based on the conclusions by Plaintiff's experts, the proximate cause of the fire is just as reasonably attributable to other causes as it is to a design or manufacturing defect.

While Plaintiff may rely on circumstantial evidence to prove a defect by a preponderance of the evidence, in order to survive summary judgment, such circumstantial evidence must be sufficient to "permit a jury to go beyond speculation" to

13

conclude that the product was defective.  *Smitley v. Nissan N. Am., Inc.,* 2:09-CV-148, 2010 WL 3027915, *4  (S.D. Ohio Aug. 2, 2010) (citing *State Farm Fire & Cas. Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 523, N.E.2d 489, 496 (1988)).  The circumstantial evidence that does exist here fails to rule out any number of potential causes of the fire and therefore cannot causally link the fire to a defect in the Tractor or any of its component parts, including its turbocharger.   There appears to be no dispute that after BFC purchased the Tractor in October 2009, it sat virtually unused in a secured shed at the Farm Center until April 2010.  (Burkhart Dep. at 97:3-15, Doc. No. 44-1.)  Indeed, Plaintiff acknowledges that the Tractor was kept in storage during the cold weather months, during which Burkhart Farms prepared the Tractor for spring by installing an in-cab guidance system and an applicator system for applying fertilizer.  (Plaintiff's Opposition, Doc. No. 44 at 3.)  Without any evidence of a defect in the Tractor or any of its component parts, a jury could not reasonably determine by a preponderance of the evidence that during the six months that the Tractor sat in storage, and when it was taken out for installation of the guidance system and applicator, nothing interfered with the proper operation of the Tractor that may have caused it to catch fire.   Moreover, Plaintiff has not shown that when Sulser performed a field fix of the Tractor the day before the fire, no objects entered the engine compartment without Sulser's knowledge that may have impacted the Tractor's operation.  Thus, to say that a defect in the Tractor caused the fire is mere speculation, as any number of events could have occurred over a period of six months that may have proximately caused the fire. Accordingly, Nationwide has failed to produce sufficient evidence to raise a genuine issue of material fact as to whether a defect in the Tractor proximately caused the

14

losses Nationwide claims.  Therefore, Defendants are entitled to summary judgment on Nationwide's strict product liability claim.

### 2.    Whether the Tractor was Substantially Modified by the Insured

Defendants argue that they are entitled to summary judgment on all of Nationwide's claims as a matter of law under the substantial modification doctrine, because an employee of Plaintiff's insured modified the Tractor's heater hose, and that modification–according to Defendants' experts–caused the fire that destroyed the Tractor.  Under Ohio law, the substantial modification doctrine provides that a claim for strict products liability in tort cannot be maintained if there has been a material alteration to the product after it left the manufacturer's control, and the modification significantly contributed to the plaintiff's injury.  *Kobza v. General Motors Corp.*, 63 Ohio App.3d 742, 745, 580 N.E.2d 47, 48-49 (Ohio Ct. App. 1989).  A substantial modification is defined as "*any* change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put."  *Id.* at 745, 580 N.E.2d at 49 (emphasis in original) (citation omitted).

The evidence presented by both parties conflicts on the issue of whether the hose repair was a substantial modification that precludes Plaintiff's claims.  Plaintiff argues that the hose repair performed on the Tractor did not amount to a "substantial modification" for purposes of the substantial modification doctrine, as it did not alter the Tractor's core functionality or safety.  Plaintiff bases its argument on the opinion of its expert, Scott Howell, who concluded that the hose repair did not alter the Tractor's

15

performance.  (Rimkus Report, Doc. No. 41-6 at 5.)  According to Howell, the heater hose is a "comfort item" that the operator of the Tractor can choose to operate or not operate, and therefore it has a minimal impact on cooling the engine.  (Rebuttal Report, Doc. No. 46-5 at 2.)  Howell further opined that re-routing the hose back into the engine block was the most efficient way for Sulser to stop the leaking fluid from the ruptured hose and had no effect on the performance of the cooling system.  (*Id.* at 3.)  Thus, Plaintiff maintains that because its expert concluded that the heater hose was merely a "comfort feature" and the hose repair did not cause an increase in engine or coolant temperature and had a minimal impact on cooling the engine, the Tractor had not been substantially modified by its owner after leaving the Defendants' control.

Defendants argue that under Ohio law, a substantial modification is *any* change which increases the likelihood of a product malfunction, and that Sulser's cutting and re-routing of the heater hose caused the Tractor to malfunction and catch fire.  Defendants rely on the opinions of their experts to support this contention.  Smyth concluded in her expert report that "the modification of the coolant hose was not a trivial repair."  (Smyth Report, Doc. No. 46-3 at 5.)  According to Smyth, the modification altered the Tractor's cooling system such that the "bend radius of the modified heater hose was significantly smaller than the minimum bend radius specified by the heater hose manufacturer."  (*Id.* at 12.)  She opined that this resulted in the increased possibility of the "ignition of a spray of coolant on the hot surfaces of the exhaust system," which could not be refuted as a cause of the fire.  (*Id.*)  Hawken, another defense expert, opined that the pressure of the fluid running through the shortened and looped hose caused the hose to rupture and release a spray of hot

16

engine coolant/antifreeze onto surrounding hot surfaces, which then ignited.  (Hawken Aff., Doc. No. 41-7 at ¶ 6.)  Hawken concluded that the fire was not caused by any defects in design or manufacture of the Tractor or turbocharger, but that it was caused by Sulser's modification of the heater hose.  (*Id.* at ¶¶ 7-8.)  Defendants argue that based on the opinions of their experts, the hose repair increased the likelihood of a malfunction and therefore was a substantial modification of the Tractor.

The expert reports introduced by each party are in conflict regarding the impact, if any, the hose repair had on the destruction of the Tractor.  The expert reports also conflict on the issue of proximate cause.  Defendants' expert, Hawken, opined to a reasonable degree of certainty that the fire was caused by the modification of the heater hose by Sulser the day before the fire occurred.  (Hawken Aff., Doc. No. 41-7 at ¶ 7.)  On the other hand, Plaintiff's experts, Howell and Gray, opined that the repaired hose was not a factor in the initiation of the fire.  (Rimkus Report, Doc. No. 41-6 at 5.)  Thus, there are material issues of fact regarding the nature and effect of the hose repair.  As a result, the issue of whether Plaintiff's claims are barred by the substantial modification doctrine is a question of fact for the jury, and summary judgment for Defendants is not proper on this ground.

### 3. Whether Plaintiff is Barred from Recovery by Ohio's Economic Loss Rule

Defendants argue that Plaintiff is barred from recovery on its negligence and strict liability claims by Ohio's economic loss rule, which generally prohibits recovery in tort of damages for purely economic loss.  *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, 106 Ohio St. 3d 412, 414, 835 N.E.2d 701, 704.  In the

17

context of a product liability claim,

> a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damage to other property the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 51, 537 N.E.2d 624, 635 (1989).

Defendants maintain that because Burkhart Farms was a commercial buyer and Nationwide seeks to recover only the amount it paid on the insurance claim for the Tractor damage, the economic loss rule bars Nationwide from recovering in tort since the damages sought are purely economic.  Nationwide admits that its insured, Burkhart Farms, is a commercial buyer for purposes of the economic loss rule, but argues that it can nonetheless recover damages in tort pursuant to the OPLA.  The OPLA provides that "[i]f a claimant is entitled to recover compensatory damages for harm from a manufacturer . . . the claimant may recover from the manufacturer . . . compensatory damages for any economic loss that proximately resulted from the defective aspect of the product in question."[2]  Ohio Rev. Code Ann. § 2307.79(A).  Thus, "[u]nder Ohio law, the economic loss doctrine does not preclude tort recovery for personal injury or

---

[2]       Unlike the common law economic loss doctrine, the OPLA does not distinguish between consumer and commercial buyers.  The definition of "claimant" under the OPLA includes "a person who asserts a product liability claim or on whose behalf such a claim is asserted."  Ohio Rev. Code Ann. § 2307.71(A)(1)(a).  "Person" under the OPLA has the same meaning as in division (C) of section 1.59 of the Ohio Revised Code, which includes corporations.  Ohio Rev. Code Ann. § 2307.71(A)(10).

physical damage to 'other property.'" *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 1:02CV00013, 2005 WL 6778678, *13 (N.D. Ohio Feb. 22, 2005).  According to Nationwide, the fire damaged property other than the Tractor, namely the in-cab GPS guidance system and the in-cab applicator system, both of which were purchased separately from the Tractor and installed inside the Tractor cab by its owner after purchasing the Tractor.  (Whittington Aff., Doc. No. 44-2 at ¶ 5.)  For this reason, Nationwide maintains that it has sustained both economic damages (the Tractor) and compensatory damages (the other property damaged by the fire) and is therefore entitled to seek recovery of both types of damages pursuant to the OPLA.

Defendants maintain that the guidance system and applicator installed in the Tractor after its purchase became part of the integrated product once they were installed and therefore are no longer "other property" for purposes of the economic loss doctrine.  In making this argument, Defendants rely on a decision by the Sixth Circuit which stands for the proposition that under Ohio law, there is no damage to "other property" when the defective product is one of several component materials that comprise a final, integrated product.  *See HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1030-32 (6th Cir. 2003).  In *HDM Flugservice,* the court held that the plaintiff could not recover in tort for damages to a helicopter attributable to defective landing gear, because the landing gear was not considered separate from the helicopter.  *Id.*  There, the Court considered the landing gear attached to the helicopter to be a component material of an integrated final product.  The Court explained that when a product malfunctions,

the cause will almost always be a component.  If Ohio courts

19

> were to hold that a component is 'other' property from the integrated product, it would allow purchasers to circumvent the economic loss rule in almost every case.  Preventing a commercial buyer from recovering the damage to the product from the component manufacturer in tort comports with the policy behind prohibiting a purchaser recovering in tort for the product itself.

*Id.* at 1031.

Defendants rely on *HDM Flugservice* to support their argument that the guidance system and applicator installed in the Tractor's cab after its purchase were integrated components of the Tractor and therefore do not constitute "other property." The Court is persuaded by Defendants' position for many of the same reasons the Court discussed in *HDM Flugservice*; namely, that if a component attached to property was not considered a part of the integrated product as a whole, purchasers who attach additional components to their property after purchase could overcome the economic loss doctrine in almost every case.

Nationwide fails to provide any legal support for its contention that the in-cab guidance system and applicator installed after the purchase of the Tractor constitute "other property," and Defendants have persuaded the Court that once the items were installed in the cab of the Tractor, they became "integrated components" of the Tractor. Accordingly, Plaintiff's negligence and strict liability claims are dismissed under the economic loss rule.

### 4.  Whether Plaintiff is Barred from Recovery Under a Negligence Theory due to the Comparative Negligence of the Insured

Defendants argue that Plaintiff is barred from recovery on its negligence claim due to the comparative negligence of Plaintiff's insured.  According to Defendants, "Mr.

20

Sulser's modification of the hose on April 5, 2010 without consulting any service manual or operator's manual amounted to comparative negligence that provides a complete defense to Nationwide's negligence claim." (MSJ, Doc. No. 41-1 at 13.)  Under Ohio's comparative negligence doctrine, a plaintiff's own negligence is a defense to a negligence claim.  *Seely v. Rahe*, 16 Ohio St.3d 25, 27, 475 N.E.2d 1271 (1985). When the plaintiff's share of the fault is 50 percent or more, the defendant is not liable. *Delta Fuels, Inc. v. Consol. Envtl. Servs., Inc.*, 2012-Ohio-2227, 969 N.E.2d 800, 805. Unless the evidence is so compelling that reasonable minds could reach but one conclusion, the issue of comparative negligence is ordinarily a question of fact.  *Id.*

Here, summary judgment is not appropriate based on the purported comparative negligence of Plaintiff's insured.  As discussed in depth in section two above, there are material issues of fact regarding the nature and effect of the hose repair.  While Defendants' expert opined that Sulser's cutting and re-routing of the Tractor's heater hose caused the fire, Plaintiff's experts rejected that theory and concluded that the hose repair was not a factor in the initiation of the fire.  Viewing the evidence in a light most favorable to the nonmoving party, the evidence is insufficient to establish that Plaintiff's insured was negligent, and, therefore, certainly cannot establish that the insured was more negligent than Defendants.  Accordingly, the issue of comparative negligence is a question of fact for the jury, and summary judgment is not appropriate on this theory.[3]

---

[3]     Plaintiff's negligence claim, however, fails for other reasons and, thus, renders this comparative negligence argument moot.

21

5.     **Whether the Ohio Product Liability Act Abrogates Plaintiff's Common Law Causes of Action for Negligence, Breach of Warranty, and Strict Liability**

Defendants maintain that Plaintiff's common law claims of negligence, breach of warranty, and strict liability are abrogated by the OPLA.  According to Defendants, Plaintiff's Amended Complaint pleads only common law claims with no mention of the OPLA.  On this basis, Defendants argue that Plaintiff is barred from recovery on all of its common law claims.  Plaintiff responds that it "acknowledges that common law product liability claims are abrogated by the Ohio Product Liability Act, but the express warranty claim and statutory product liability claims remain, and defendants' Motion for Summary Judgment should be denied because there are material issues of fact regarding the origin and cause of the fire."  (Plaintiff's Opposition, Doc. No. 44 at 1.)  Plaintiff does not offer any reasons for its blanket assertion that its common law claims alleging express warranty and "statutory product liability claims"[4] are not abrogated by the OPLA.  (*Id.*)  The OPLA specifically provides that it "abrogate[s] all common law product liability claims or causes of action."  Ohio Rev. Code Ann. § 2307.71(B).  Under the OPLA:

> "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.90 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose

---

4        Plaintiff refers to its strict liability claims as "statutory"; however, as Defendants note, Plaintiff's First Amended Complaint makes no reference to the OPLA.  On its face, the complaint appears to raise three common law claims for relief: negligence, breach of warranty, and strict liability. (Amend. Compl., Doc. No. 5-1 at 3-5.)

22

from any of the following:

(a)  The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(b)  Any warning or instruction, or lack of warning or instruction, associated with that product;

(c)  Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code. Ann. § 2307.71(A)(13)(a)-(c).

Plaintiff has conceded that its negligence claim is abrogated by the OPLA. (Plaintiff's Opposition, Doc. No. 44 at 1, 8.)  Therefore, summary judgment on Plaintiff's claim of negligence is proper as a matter of law.  *See Miller v. ALZA Corp.*, 759 F.Supp.2d 929, 943 (S.D. Ohio 2010) (granting summary judgment on the plaintiff's negligence and negligent misrepresentation claims when the plaintiff conceded that those claims were abrogated by the OPLA.  Plaintiff contends that summary judgment as to its remaining claims of breach of express and implied warranties and strict liability should be denied, but offers no explanation for why these claims are not also abrogated by the OPLA.  Indeed, courts have held that the OPLA abrogates beach of warranty and strict product liability claims.  *See, e.g., Mitchell v. Proctor & Gamble,* 2:09-CV-426, 2010 WL 728222, *3 (S.D. Ohio Mar. 1, 2010)* ("The OPLA has been held to abrogate claims for strict products liability, negligent failure to warn, breach of express warranty, and breach of implied warranty."); *McConnell v. Cosco, Inc.,* 238 F. Supp. 2d 970, 974-76 (S.D. Ohio 2003) ("Strict products liability claims in Ohio are governed by Ohio Revised Code sections 2307.81 through 2307.80."); *Delahunt v. Cytodyne Technologies,* 241 F. Supp. 2d 827,

23

842-44 (S.D. Ohio 2003) (dismissing claims for negligence and breach of express warranty because such claims are preempted by the OPLA); *Stratford v. SmithKline Beecham Corp.,* *No. 2:07-CV-639, 2008 WL 2491965 (S.D. Ohio June 17, 2008)* (holding that the OPLA has preempted the implied warranty of merchantability and the implied warranty of fitness for a particular purpose).

Because the OPLA expressly declared its intention to abrogate "all common law products liability causes of action," if the common law breach of warranty and strict liability claims asserted by Plaintiff are "common law product liability causes of action," they are preempted.  In its First Amended Complaint, Plaintiff alleges that Defendants breached express and implied warranties that the Tractor and its components were good and of merchantable quality and fit for the ordinary purposes for which such goods are used. (Amend. Compl., Doc. No. 5-1 at ¶ 16.)  The OPLA unequivocally encompasses claims based on the failure of a product "to conform to any relevant representation or warranty." Ohio Rev. Code. Ann. § 2307.71(A)(13)(c).  Accordingly, Plaintiff's claims for breach of express and implied warranties, to the extent premised upon Ohio common law as opposed to contract or statutory law, fail as a matter of law.[5]  *See Miles v. Raymond Corp.,* *612 F. Supp. 2d 913, 923 (N.D. Ohio 2009) (Lioi, J.)* (holding that the plaintiff's common law express and implied warranty claims were preempted by the OPLA); *Miller v. ALZA* *Corp.,* 759 F. Supp. 2d 929, 944 (S.D. Ohio 2010) (holding that the plaintiff's common law claims for breach of implied warranty of fitness and breach of express warranty have been

---

[5]    Plaintiff's Amended Complaint makes no reference–expressly or impliedly–to the Uniform Commercial Code ("UCC") or its codification in Ohio.

24

abrogated by the OPLA).

Furthermore, it appears on the face of Plaintiff's Amended Complaint that its strict liability claim was plead under the common law rather than the Act.  While case law, as cited above, supports Defendants' argument that Plaintiff's common law claims for strict liability and breach of warranty are abrogated by the OPLA, the Court will not grant summary judgment on Plaintiff's strict liability and breach of warranty claims for that reason alone.  Instead, the Court will treat Plaintiff's strict product liability claim under the OPLA rather than a claim for common law strict liability.  Pursuant to the discussion under section one above, however, Plaintiff's strict product liability claim is dismissed on other grounds.  Plaintiff's first claim for relief (negligence) is abrogated by the OPLA, as Plaintiff concedes.  Plaintiff's second claim for relief (breach of warranties) is discussed below.

### 6.      Whether Plaintiff's Breach of Warranty Claims are Barred by the Terms of the Tractor's Express Warranty

As previously discussed under section five above, Plaintiff's common law breach of warranty claims are abrogated by the OPLA.  Furthermore, even if the Court were to consider Plaintiff's express warranty claim to have been plead under the UCC, the claim would fail.  As Defendants note, the warranty that accompanied the Tractor includes a section titled "What's Not Covered" that contains clear and unambiguous language plainly stating that the warranty does not apply in the event of "[u]nauthorized modification or field fixes" or "[r]epairs arising from any unauthorized modification to the product."  (Warranty, Doc. No. 41-8 at 3.)  By attempting to repair the Tractor's heater hose without first consulting the manufacturer, Plaintiff's insured performed an "unauthorized modification or field fix," rendering the express warranty inapplicable.

25

Accordingly, summary judgment is appropriate on Plaintiff's breach of express warranty claim.[6]

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED with regard to all of Plaintiff's claims, which are hereby dismissed as a matter of law.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: June 4, 2014

---

[6]      Likewise, even if the Court considered Plaintiff's claim for breach of implied warranty to be plead under the UCC, the claim would fail, as the warranty that accompanied the Tractor contains explicit language disclaiming the implied warranties of merchantability and fitness for a particular purpose.  (Warranty, Doc. No. 41-8 at 3.)

26